1 Randy H. McMurray, Esq. (SBN 126888)
rmcmurray@law-mh.com
2 Yana G. Henriks, Esq. (SBN 250638)
yhenriks@law-mh.com
3 **McMURRAY HENRIKS, LLP**
5670 Wilshire Blvd., Suite 1450
4 Los Angeles, California 90036
Telephone: (323) 931-6200
5 Facsimile: (323) 931-9521

6 Attorneys for Plaintiff VALERIE WILLIAMS

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11 VALERIE WILLIAMS, an individual, | **Case No.: EDCV 13-01954 DDP (DTBx)** |
| 12 Plaintiff, vs. | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| 13 COUNTY OF RIVERSIDE, a municipal organization; STANLEY SNIFF, individually and in his Official Capacity as Sheriff-Coroner of Riverside County; JEREMY BRACEY, an individual; RYAN RAHNER, an individual; CARLOS VASQUEZ, an individual; STEVEN LYCOPOLUS, an individual; JOHN KEHRIER, an individual; and DOES 1-25, inclusive, Defendants. | 1. **ASSAULT/BATTERY – WRONGFUL DEATH;** 2. **NEGLIGENCE – WRONGFUL DEATH;** 3. **EXCESSIVE FORCE, 42 U.S.C. § 1983;** 4. **EXCESSIVE FORCE, 42 U.S.C. § 1983, *MONELL*;** 5. **DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, 42 U.S.C. § 1983;** 6. **RIGHT OF FAMILIAL ASSOCIATION, 42 U.S.C. § 1983;** 7. **RIGHT OF FAMILIAL ASSOCIATION, 42 U.S.C. § 1983, *MONELL*;** 8. **FAILURE TO PROPERLY SCREEN AND HIRE, 42 U.S.C. § 1983, *MONELL*;** |

FILED

2013 DEC -9  PM 2: 54

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.

BY:____

1

**9. FAILURE TO TRAIN, SUPERVISE, AND DISCIPLINE, 42 U.S.C. § 1983, *MONELL*;**

**10. VIOLATION OF CAL. CIV. CODE § 52.1**

**11. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**12. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

COMES NOW the PLAINTIFF above named, and in her capacity as set out, to complain of DEFENDANTS and each of them and allege as follows:

## NATURE OF THE ACTION

1.      This is a civil rights and wrongful death action seeking monetary damages from Defendants for violating various rights under the United States Constitution and California state law in connection with the  death of Anthony James Lawson, on October 21, 2012.

## PARTIES

2.      At all relevant times, Anthony James Lawson ("LAWSON" or "Mr. Lawson") was an individual residing in the County of Riverside, California. At the time of LAWSON'S death, LAWSON was not married and did not have a will or any form of testamentary interest.

3.      Plaintiff VALERIE WILLIAMS ("PLAINTIFF"), is and was, at all times pertinent hereto, an individual residing in the County of Riverside, California, and was at all relevant times LAWSON'S biological mother, heir, survivor and successor in interest of LAWSON as defined in California Code of Civil Procedure § 377.11.

1 | PLAINTIFF is a person described in California Code of Civil Procedure § 337.60(a) as
2 | a person who may bring a wrongful death action and would be entitled to the property
3 | of Mr. Lawson by intestate succession.

4 |     4.    In her own right, PLAINTIFF brings her claims for wrongful death and
5 | under 42 U.S.C. § 1983 for deliberate indifference to her constitutionally protected
6 | interests. PLAINTIFF also brings claims under 42 U.S.C. § 1983 and Cal. Civ. Code §
7 | 52.1 for violation of LAWSON'S constitutional rights, as Successor in Interest to
8 | LAWSON.

9 |     5.    Defendant, COUNTY OF RIVERSIDE (hereinafter "COUNTY"), is now,
10 | and at all times mentioned in this Complaint was, a municipal corporation and political
11 | subdivision organized and existing under the laws of the State of California and owns,
12 | operates, manages, directs and controls the activities of all employees of the Riverside
13 | County Sheriff-Coroner.

14 |     6.    Defendant, STANLEY SNIFF ("SNIFF") at all material times was
15 | employed as Sheriff-Coroner by Defendant COUNTY. On information and belief,
16 | Defendant SNIFF is, and at all times mentioned in this Complaint was, a resident of the
17 | County of Riverside, State of California.

18 |     7.    Defendant, JEREMY BRACEY ("BRACEY") at all material times was
19 | employed as a Deputy Sheriff by Defendant COUNTY. On information and belief,
20 | Defendant BRACEY is, and at all times mentioned in this Complaint was, a resident of
21 | the County of Riverside, State of California.

22 |     8.    Defendant, RYAN RAHNER ("RAHNER") at all material times was
23 | employed as a Deputy Sheriff by Defendant COUNTY. On information and belief,
24 | Defendant RAHNER is, and at all times mentioned in this Complaint was, a resident of
25 | the County of Riverside, State of California.

26
27
28

9.    Defendant, COUNTY OF RIVERSIDE (hereinafter "COUNTY"), is now, and at all times mentioned in this Complaint was, a municipal corporation and political subdivision organized and existing under the laws of the State of California and owns, operates, manages, directs and controls the activities of all employees of the Riverside County Sheriff-Coroner.

10.    Defendant, STANLEY SNIFF ("SNIFF") at all material times was employed as Sheriff-Coroner by Defendant COUNTY. On information and belief, Defendant SNIFF is, and at all times mentioned in this Complaint was, a resident of the County of Riverside, State of California.

11.    Defendant, JEREMY BRACEY ("BRACEY") at all material times was employed as a Deputy Sheriff by Defendant COUNTY. On information and belief, Defendant BRACEY is, and at all times mentioned in this Complaint was, a resident of the County of Riverside, State of California.

12.    Defendant, RYAN RAHNER ("RAHNER") at all material times was employed as a Deputy Sheriff by Defendant COUNTY. On information and belief, Defendant RAHNER is, and at all times mentioned in this Complaint was, a resident of the County of Riverside, State of California.

13.    Defendant, CARLOS VASQUEZ ("VASQUEZ") at all material times was employed as a Deputy Sheriff by Defendant COUNTY. On information and belief, Defendant VASQUEZ is, and at all times mentioned in this Complaint was, a resident of the County of Riverside, State of California.

14.    Defendant, JOHN KEHRIER ("KEHRIER") at all material times was employed as a Deputy Sheriff Defendant COUNTY. On information and belief, Defendant KEHRIER is, and at all times mentioned in this Complaint was, a resident of the County of Riverside, State of California.

15.    Defendant, STEVEN LYCOPOLUS ("LYCOPOLUS") at all material times was employed as a Deputy Sheriff by Defendant COUNTY. On information and

4

belief, Defendant LYCOPOLUS is, and at all times mentioned in this Complaint was, a resident of the County of Riverside, State of California.

16.    In doing the acts alleged in this Complaint, Defendants BRACEY, RAHNER, VASQUEZ, KEHRIER, LYCOPOLUS, and SNIFF were acting under the color of statutes, ordinances, regulations, customs, laws, and usages of Defendant COUNTY and the State of California and under the authority of their respective offices.

17.    DOES 1 through 25, inclusive, are also those persons or entities whose conduct caused the injuries and damages alleged herein. The true names and/or capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1 through 25, inclusive, and each of them, are presently unknown to Plaintiff who therefore sue said Defendants by such fictitious names.  Plaintiff is informed and believes and thereupon alleges that each of the Defendants herein fictitiously named as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred, and therefore, proximately caused the injuries and damages to Plaintiff as herein alleged.  Plaintiff will seek leave of Court to amend this Complaint and state the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

18.    Defendants, and each of them, were the agents, employees and servants of each other and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named Defendants and each of the Defendants had approved or ratified the actions of the other Defendants thereby making the currently named Defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

///

///

**JURISDICTION AND VENUE**

19.     This action arises under 42 U.S.C. § 1983. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

20.     This Court has general and/or specific personal jurisdiction over all Defendants with respect to the conduct alleged in this First Amended Complaint. The Defendants have their principal place of business or residence inside this judicial district, engaged in conduct as described herein in this judicial district, and caused injury to LAWSON and Plaintiff in this judicial district. A substantial part of the events, omissions, and injuries giving rise to the counts in this First Amended Complaint occurred in this judicial district.

21.     Venue is proper in the United States District Court for the Central District of California under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391 because Defendants reside or transact business and/or caused injury in this judicial district.

**RELEVANT TIME PERIOD**

22.     Defendants' wrongful conduct and the events giving rise to this action occurred on October 21, 2012.

**FACTS COMMON TO ALL CAUSES OF ACTION**

23.     Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

24.     On or about October 21, 2012, at approximately 12:43 a.m., PLAINTIFF dialed 9-1-1 to request assistance at her residence, located at 7361 Citrus Valley Avenue in Eastvale, California.

25. While en route to respond to PLAINTIFF' house after being dispatched, Deputy BRACEY heard another nearby call on the dispatch notifying him of a burglary in the same area as PLAINTIFF'S home.

26. Defendant BRACEY mistakenly identified LAWSON as the suspect in the burglary, called for backup, and exited his marked service vehicle.

27. Defendant BRACEY then confronted LAWSON and asked him to step back to the sidewalk and sit on the sidewalk, commands with which LAWSON complied.

28. Defendant BRACEY tried talking with the LAWSON but noticed he was dripping in sweat and appeared to be incoherent – all signs that LAWSON was in need of immediate medical attention, yet BRACEY did not call for an ambulance, nor did any of the other Defendants until it was much too late.

29. At no time did any of the Defendants conduct a search of LAWSON'S person to ascertain whether he was armed with any weapon. LAWSON was not armed with any weapons, nor did he constitute a threat to any person at the time he walked away from Defendants.

30. LAWSON began to walk in the opposite direction and was detained when Defendant RAHNER arrived on the scene.

31. LAWSON was known to Defendant RAHNER from previous contacts in the neighborhood, and RAHNER was familiar with the LAWSON and knew or should have known LAWSON had a mental illness. RAHNER attempted to talk with LAWSON, but also observed the same symptoms – the appearance that LAWSON was incoherent, dripping with sweat, could not sit still, and could not make eye contact. All of these symptoms are obvious signs of physical and/or mental distress, and on their own are enough to warrant calling for paramedics to respond to the scene.

32. During Defendant RAHNER'S attempts to engage LAWSON in conversation and his observations, at no time did RAHNER call for paramedics.

33.    LAWSON, as a result of his mental distress, walked away from BRACEY and RAHNER and tried to evade their attempts to hold him down or place him in handcuffs.  At this time, LAWSON was making animal-like sounds that indicated fear and/or mental illness and LAWSON at no time tried to harm anyone.  LAWSON only attempted to avoid the Defendants.

34.    BRACEY and RAHNER had called for backup, and Defendant LYCOPOLUS was the first to respond to the scene.

35.    Defendant LYCOPOLUS observed the same physical symptoms as described above, but also did not call for paramedics to respond to the scene.

36.    Defendant LYCOPOLUS immediately and unreasonably determined that force was necessary, despite observing the same outward physical signs of LAWSON'S distress, and deployed an X26 taser on LAWSON, using two full cartridges and discharging the X26 taser a total of nine times in less than three minutes, in an attempt to further immobilize him.

37.    Defendant LYCOPOLUS also struck LAWSON several times after he deployed the X26 taser and LAWSON had not been immobilized.

38.    The combination of the physical and mental symptoms LAWSON was already experiencing, coupled with the excessive and unreasonable force used by police, including holding him to the ground, the shock delivered by the X26 taser, and the numerous blows to the head rendered LAWSON unconscious and mortally wounded him.

39.    During this entire encounter, LAWSON made sounds of distress that were likened to an animal being in severe pain or mentally distressed, not sounds that a human being of sound mind would normally make.

40.    Defendants BRACEY, RAHNER, and LYCOPOLUS pinned LAWSON to the ground in an attempt to place handcuffs on him.

41.    Defendants KEHRIER and VASQUEZ subsequently responded to the scene.  Defendants KEHRIER and VASQUEZ also observed the same physical and

1    mental sign and symptoms and that LAWSON was not cooperative or responsive to

2    commands, but instead of calling for paramedics, Defendants KEHRIER and

3    VASQUEZ joined the effort to subdue LAWSON.

4         42.   Defendant LYCOPOLUS asked Defendant KEHRIER to retrieve what is

5    known as a "hobble" device to tie LAWSON'S legs together, and asked Defendant

6    VASQUEZ to take over for Defendants BRACEY and RAHNER in pinning

7    LAWSON'S arms to his back.

8         43.   Defendants then handcuffed LAWSON'S wrists and employed the hobble

9    device on his legs.

10        44.   Defendants finally summoned paramedics to the scene at approximately

11   1:05 a.m. on October 21, 2012 once they realized LAWSON was unresponsive and not

12   breathing.  None of the Defendants rendered any first aid to LAWSON.  They simply

13   turned him on his side and observed him foaming at the mouth.

14        45.   LAWSON was declared dead at the hospital at approximately 1:54 a.m. on

15   October 21, 2012.

16        46.   On information and belief, a reasonable law enforcement officer would not

17   have, among other things, used a baton to strike a person, and a taser to shock multiple

18   times and mortally wounded LAWSON under the same circumstances because: (a)

19   LAWSON posed no real, immediate or significant threat of death or serious bodily

20   injury to the Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, VASQUEZ,

21   himself or the public; (b) it is  simply from LAWSON'S race and dress  that LAWSON

22   was believed to be  the same person described as a suspect in the burglary call to which

23   Defendant BRACEY originally responded, and (c) there were several alternative means

24   of responding to the situation without excessively using multiple forms of force.

25        47.   Prior to the death of LAWSON, Plaintiff was in close and constant contact

26   with LAWSON and was dependent on him for love, comfort, companionship, familial

27   relationship, monetary and non-monetary support and maintenance.

28

48.     At all times relevant hereto, Defendant SNIFF was responsible for the training of all deputies of Defendant COUNTY in the proper use of force in the performance of their duties as deputies. Defendants BRACEY and RAHNER were trained by the COUNTY, at the direction, special insistence, and under the control of SNIFF, in the use of force in accordance with the statutes, ordinances, regulations, customs, and usages of the Defendant COUNTY and the State of California. Defendant SNIFF was also responsible for enforcing the regulations of the COUNTY and for ensuring that law enforcement personnel of the COUNTY obeyed the laws of the State of California and the United States of America.

49.     Defendants SNIFF and COUNTY, by and through their supervisory employees and officials, have been on notice through complaints, both formal and informal, that its officers have repeatedly engaged in a pattern and practice of purposefully abridging the rights, constitutional and otherwise, of persons within their jurisdiction. Despite such notice, the COUNTY, SNIFF, and certain of the DOE DEFENDANTS, and each of them, demonstrated deliberate indifference to this pattern and practice of violations of rights by failing to take necessary, appropriate, or adequate measures to ensure the cessation of such conduct. This deliberate indifference of the Defendants amounts to an informal policy or custom, and ratification, said policy or custom ratified being another proximate cause of the death of LAWSON.

50.     On or about March 6, 2013, each Plaintiff presented Defendant COUNTY with a claim for damages and losses sustained as a result of the incident described in this Complaint pursuant to Cal. Gov. Code § 905. Attached as Exhibit "B" and incorporated herein by this reference is a true and correct copy of the claim presented to the COUNTY.

51.     On or about April 22, 2013, Defendant COUNTY rejected Plaintiff's claims in their entirety. Attached as Exhibit "C" and incorporated herein by this reference is a true and correct copy of the notice by the COUNTY of denial of the claim.

### FIRST CAUSE OF ACTION

#### Assault and Battery/Wrongful Death

#### (Plaintiff v. All Defendants)

52.    Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

53.    On October 21, 2012, at approximately 12:50 a.m., Defendant COUNTY through its employee, LYCOPOLUS, intended to strike and did strike LAWSON repeatedly in the head after using two full taser cartridges and discharging the X26 taser a total of nine times in less than three minutes on LAWSON.

54.    LAWSON was pronounced dead at Kaiser Foundation Hospital approximately one hour after becoming unresponsive as a result of Defendants' actions.

55.    Defendants BRACEY and RAHNER had ample time to deliberate and to determine that LAWSON was in some form of mental and/or physical distress before ANY force was used on LAWSON, including the two full cartridges worth of electric shocks and before subsequently choosing to repeatedly strike LAWSON with a baton.

56.    Defendants KEHRIER and VASQUEZ had sufficient time after their arrival on the scene to observe that LAWSON was in some sort of mental and/or physical distress and to call for paramedics to respond to the scene, but neither Defendant did so.

57.    On information and belief, a reasonable law enforcement officer would not have, among other things, struck a person repeatedly with a baton and mortally wounded LAWSON following the deployment of two taser cartridges, discharging the X26 taser a total of nine times in less than three minutes on LAWSON under the same circumstances because: (a) LAWSON posed no real, immediate or significant threat of death or serious bodily injury to the Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, VASQUEZ, or the public; (b) it is inconclusive simply from LAWSON'S race and dress that LAWSON was in fact the same person identified as a suspect in the

1  burglary call to which Defendant BRACEY originally responded, and (c) there were

2  several alternative means of responding to the situation without excessively using

3  multiple forms of force.

4          58.    LAWSON did not consent to the use of that force.

5          59.    The actions of Defendants also aroused fear in the person of LAWSON

6  and were against his will.

7          60.    As a direct and proximate result of the assault and battery described above,

8  LAWSON died on October 21, 2012.

9          61.    As a further direct and proximate result of the assault and battery described

10  above, and wrongful death of LAWSON, Plaintiff has sustained pecuniary and

11  compensable loss resulting from the loss of LAWSON'S care, society, attention,

12  services, affection, familial relationship, companionship, love and monetary and non-

13  monetary support as provided in Section 377.61 of the California Code of Civil

14  Procedure, all in an amount not yet determined and to be proven at the time of trial.

15          62.    As a further direct and proximate result of the assault and battery described

16  above, Plaintiff has also incurred reasonable and necessary expenses for LAWSON'S

17  funeral, burial and memorial services to her damage in a presently unascertained sum.

18  Plaintiff request permission to insert the amount when it is finally determined.

19          63.    As a further direct and proximate result of the assault and battery described

20  above, Plaintiff has been generally damaged in a sum to be established according to

21  proof at the time of trial, as provided in Cal. Code of Civ. Proc. §§ 425.10 and 425.11.

22          64.    On information and belief, the wrongful acts and conduct of Defendants, as

23  set forth above, was conducted or occurred deliberately, intentionally, knowingly,

24  maliciously, willfully, wantonly, and with conscious and reckless disregard for the

25  rights and safety of LAWSON, entitling Plaintiff to an award of exemplary damages as

26  successor in interest to LAWSON as provided by Section 337.34 of the California Code

27  of Civil Procedure.

28

65. The COUNTY is vicariously liable for the wrongful acts of Defendants pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

## SECOND CAUSE OF ACTION
### Negligence/Wrongful Death
### (Plaintiff v. All Defendants)

66. Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

67. On information and belief, a reasonable law enforcement officer would not have struck a person repeatedly with a baton and mortally wounded LAWSON following the deployment of two taser cartridges, discharging the X26 taser a total of nine times in less than three minutes on LAWSON under the same circumstances because: (a) LAWSON posed no real, immediate or significant threat of death or serious bodily injury to the Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, VASQUEZ, or the public; (b) it is inconclusive simply from LAWSON'S race and dress that LAWSON was in fact the same person identified as a suspect in the burglary call to which Defendant BRACEY originally responded, and (c) there were several alternative means of responding to the situation without excessively using multiple forms of force.

68. Therefore, in committing the acts described above, Defendants were negligent, careless, reckless and/or otherwise failed to meet their duties, non-delegable and otherwise, which it owed to LAWSON.

69. At all times material hereto the Defendants knew or should have known that its failure to act reasonably when arresting or otherwise detaining LAWSON would result in serious bodily injury and/or death of LAWSON.

70. As a direct and proximate result of the negligent and careless acts described above, LAWSON died on October 21, 2012.

71. As a further direct and proximate result of the negligent and careless acts described above, and wrongful death of LAWSON, Plaintiff has sustained pecuniary and compensable loss resulting from the loss of LAWSON'S care, society, attention, services, affection, familial relationship, companionship, love and monetary and non-monetary support as provided in Section 377.61 of the California Code of Civil Procedure, all in an amount not yet determined and to be proven at the time of trial.

72. As a direct and proximate result of the negligent and careless acts described above, Plaintiff has also incurred reasonable and necessary expenses for LAWSON'S funeral, burial and memorial services to his damage in a presently unascertained sum. Plaintiff request permission to insert the amount when it is finally determined.

73. As a direct and proximate result of the negligent and careless acts described above, Plaintiff has been generally damaged in a sum to be established according to proof at the time of trial, as provided in Cal. Code of Civ. Proc. §§ 425.10 and 425.11.

74. On information and belief, the wrongful acts and conduct of Defendants, as set forth above, was conducted or occurred deliberately, intentionally, knowingly, maliciously, willfully, wantonly, and with conscious and reckless disregard for the rights and safety of LAWSON, entitling Plaintiff to an award of exemplary damages as successor in interest to LAWSON as provided by Section 337.34 of the California Code of Civil Procedure.

75. The COUNTY is vicariously liable for the wrongful acts of Defendants pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

14

### THIRD CAUSE OF ACTION

### Excessive Force, 42 U.S.C. § 1983

### (Plaintiff vs. Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, and VASQUEZ)

76.     Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

77.     Defendants BRACEY, RAHNER, and LYCOPOLUS used force, including multiple forms of excessive and unreasonable force, to arrest and/or detain LAWSON when they repeatedly struck him with a baton after deploying two full taser cartridges on him, discharging the X26 taser a total of nine times in less than three minutes, mortally wounding LAWSON. Defendants BRACEY, RAHNER, and LYCOPOLUS acted under color of law at all times relevant to this Complaint. Had LAWSON survived the unnecessary deprivation of his civil rights alleged herein, a portion of this claim would have inured to his benefit.

78.     On information and belief, a reasonable law enforcement officer would not have struck a person repeatedly with a baton and mortally wounded LAWSON following the deployment of two taser cartridges, discharging the X26 taser a total of nine times in less than three minutes on LAWSON under the same circumstances because: (a) LAWSON posed no real, immediate or significant threat of death or serious bodily injury to the Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, VASQUEZ, or the public; (b) it is inconclusive simply from LAWSON'S race and dress  that LAWSON was in fact the same person identified as a suspect in the burglary call to which Defendant BRACEY originally responded, and (c) there were several alternative means of responding to the situation without excessively using multiple forms of force.

79.     As a result, the use of multiple forms of force was excessive and objectively unreasonable under the circumstances. The force used was also performed

1   with a deliberate indifference to the safety and welfare of LAWSON. Defendants'
2   actions thus deprived LAWSON of his right to be free from the use of excessive force
3   by law enforcement and secure in his person against unreasonable searches and seizures
4   as guaranteed to him under the Fourth Amendment of the United States Constitution.

5        80.   As a direct and proximate result of Defendants' deprivations and violations
6   of LAWSON'S Fourth Amendment rights, and wrongful death of LAWSON, Plaintiff,
7   as successor in interest to LAWSON, has suffered general and special damages
8   according to proof at the time of trial.

9        81.   As a further direct and proximate result of Defendants' deprivations and
10  violations of LAWSON'S Fourth Amendment rights, and wrongful death of LAWSON,
11  Plaintiff has sustained pecuniary and compensable loss resulting from the loss of
12  LAWSON'S care, society, attention, services, affection, familial relationship,
13  companionship, love and monetary and non-monetary support as provided in Section
14  377.61 of the California Code of Civil Procedure, all in an amount not yet determined
15  and to be proven at the time of trial.

16       82.   As a further direct and proximate result of Defendants' deprivations and
17  violations of LAWSON'S Fourth Amendment rights, and wrongful death of LAWSON,
18  Plaintiff has also incurred reasonable and necessary expenses for LAWSON'S funeral,
19  burial and memorial services to their damage in an amount according to proof at the
20  time of trial.

21       83.   As a further result of the foregoing, Plaintiff is entitled to recover
22  reasonable costs and attorney fees under 42 U.S.C. § 1988.

23       84.   In committing the acts described above, Plaintiff is informed and believes
24  Defendants acted with oppression, fraud, or malice, entitling Plaintiff to an award of
25  punitive damages under 42 U.S.C. § 1983 and California Code of Civil Procedure §
26  337.34 against Defendants in an amount according to proof at time of trial.

27

28

16

## FOURTH CAUSE OF ACTION

### Excessive Force, 42 U.S.C. § 1983, *Monell*

### (Plaintiff v. COUNTY, SNIFF, and DOES 1-25)

85.     Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

86.     Defendants maintained an unconstitutional custom, policy or practice, within the meaning of *Monell v. Department of Social Services of the COUNTY of New York,* 436 U.S. 658 (1978) *("Monell"),* of detaining and arresting individuals with use of excessive and deadly force and depriving persons of life, liberty and property. Defendants also maintained an unconstitutional force policy regarding the use of alternative force.

87.     Defendants either knew or had constructive knowledge that it should arm and train its law enforcement personnel in assessing the mental and physical condition of any persons their personnel contacted during the course of performing their duties for the COUNTY prior to employing the use of alternative uses of force such as the taser or stun-gun, pepper spray, or pepper ball or bean bag gun, or the use of a baton. Defendants also either knew or had constructive knowledge they could save lives by training its officers in the use of alternative force and changing its policy regarding use of force so that there was a clear alternative to the use of force when a person in obvious mental or physical distress presented to the officers. Despite having this knowledge, Defendants condoned, tolerated and through actions and inactions thereby ratified such policies.

88.     The unconstitutional policy and refusal to train personnel to employ safety practices prior to the use of tasers or stun--guns, pepper sprays, or pepper ball or bean bag guns, or the use of batons, was a direct cause of the death of LAWSON in this case.

89.     By perpetrating, sanctioning, tolerating, and ratifying the conduct and other wrongful acts, Defendants COUNTY and SNIFF acted with an intentional, reckless,

17

1  and callous disregard for the life of LAWSON and the constitutional and human rights
2  of LAWSON and Plaintiff.

3       90.    The conduct alleged herein violated LAWSON'S right alleged above
4  which has legally, proximately, foreseeably and actually caused Plaintiff to suffer
5  general and special damages according to proof at the time of trial.

6       91.    Plaintiff is also entitled to recover reasonable costs and attorney fees
7  under 42 U.S.C. § 1988.

8       92.    In committing the acts described above, Plaintiff is informed and believes
9  Defendant SNIFF acted with oppression, fraud, or malice, entitling Plaintiff to an award
10  of punitive damages against Defendant SNIFF in an amount according to proof at time
11  of trial.

12

13                     **FIFTH CAUSE OF ACTION**

14     **Deliberate Indifference to Serious Medical Needs, 42 U.S.C. § 1983**

15  **(Plaintiff v. Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, and**
16                     **VASQUEZ)**

17       93.    Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and
18  incorporates the same herein by this reference as if those paragraphs were set forth in
19  full herein.

20       94.    Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, and
21  VASQUEZ disregarded a substantial risk of serious harm to LAWSON'S health or
22  safety in the following way:

23          94.1.  When they refrained from calling for paramedics, administering first
24              aid, and otherwise securing medical care immediately after initially
25              noting that LAWSON was dripping in sweat and appeared to be
26              incoherent and could not make eye contact; and
27          94.2.  Again when they refrained from calling for paramedics,
28              administering first aid, and otherwise securing medical care

immediately after immediately after one of the Defendants recognized LAWSON as a mentally ill individual with whom he was familiar; and

94.3.   Again when they refrained from calling for paramedics, administering first aid, and otherwise securing medical care immediately after LAWSON began making animal-like sounds that indicated fear and pain upon being held down; and

94.4.   Again when they refrained from calling for paramedics, administering first aid, and otherwise securing medical care immediately after Defendants tasered and struck LAWSON and LAWSON became non-responsive and stopped breathing.

95.   Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, and VASQUEZ acted under color of law at all times relevant to this Amended Complaint. Had LAWSON survived the unnecessary deprivation of his civil rights alleged herein, a portion of this claim would have inured to his benefit.

96.   On information and belief, Defendants knew or should reasonably have known that there was a substantial risk of serious harm to LAWSON'S health or safety because of (a) the obvious signs of LAWSON'S physical and mental distress; (b) the Defendants' knowledge of LAWSON'S identity and illnesses; and (c) the severity of the physical force Defendants exercised upon LAWSON.

97.   On information and belief, a reasonable law enforcement officer would not have failed to call for paramedics, administer first aid, and otherwise secure medical care for LAWSON because (a) LAWSON was in obvious physical and mental distress, (b) LAWSON was known to Defendants as a mentally ill individual; (c) Defendants exercised severe physical force on LAWSON; (d) LAWSON posed no real, immediate or significant threat of death or serious bodily injury to the Defendants; and (c) immediately addressing LAWSON'S serious medical needs would not have exposed Defendants to any real, immediate or significant threat of death or serious bodily injury.

98.   As a result, the failure to immediately address LAWSON'S serious

19

1  medical needs was objectively unreasonable under the circumstances and was

2  motivated by a deliberate indifference to LAWSON'S serious medical needs.

3  Defendants' actions thus deprived LAWSON of his right not to have his serious

4  medical needs ignored by those who held him in custody as guaranteed to him under the

5  Fourteenth Amendment of the United States Constitution.

6      99.  As a direct and proximate result of Defendants' deprivations and violations

7  of LAWSON'S Fourteenth Amendment rights, and the wrongful death of LAWSON,

8  Plaintiff as successor in interest to LAWSON, has suffered general and special damages

9  according to proof at the time of trial.

10     100.  As further direct and proximate result of Defendants' deprivations and

11  violations of LAWSON'S Fourteenth Amendment rights, and the wrongful death of

12  LAWSON, Plaintiff has sustained pecuniary and compensable loss resulting from the

13  loss of LAWSON'S care, society, attention, services, affection, familial relationship,

14  companionship, love and monetary and non-monetary support as provided in Section

15  377.61 of the California Code of Civil Procedure, all in an amount not yet determined

16  and to be proven at the time of trial.

17     101.  As a further direct and proximate result of Defendants' deprivations and

18  violations of LAWSON'S Fourteenth Amendment rights, and the wrongful death of

19  LAWSON, Plaintiff has also incurred reasonable and necessary expenses for

20  LAWSON'S funeral, burial and memorial services to their damage in an amount

21  according to proof at the time of trial.

22     102.  As a further result of the foregoing, Plaintiff is entitled to recover

23  reasonable costs and attorney fees under 42 U.S.C. § 1988.

24     103.  In committing the acts described above, Plaintiff is informed and believes

25  Defendants acted with oppression, fraud, or malice, entitling Plaintiff to an award of

26  punitive damages under 42 U.S.C. § 1983 and California Code of Civil Procedure §

27  337.34 against Defendants in an amount according to proof at time of trial.

28

## SIXTH CAUSE OF ACTION

### Rights of Familial Association, 42 U.S.C. § 1983
### (Plaintiff v. Defendants BRACEY, RAHNER, LYCOPOLUS,
### KEHRIER, VASQUEZ, and DOES 1-25)

104.   Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

105.   Plaintiff held a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including, but not limited to, unwarranted state interference with the familial relationship of LAWSON.

106.   Defendants, acting under color of state law, thus violated the Fourteenth Amendment rights of Plaintiff to be free from unwarranted interference with their familial relationship with each other.

107.   As a direct and proximate cause of Defendants' deprivations and violations of Plaintiff's Fourteenth Amendment rights, Plaintiff has been deprived of the life-long comfort, support, society, care, attention, services, affection, and companionship of LAWSON, and will continue to be so deprived for the remainder of their natural lives.

108.   As a further direct and proximate result of Defendants' deprivations and violations of Plaintiff's Fourteenth Amendment rights, Plaintiff has also incurred reasonable and necessary expenses for LAWSON'S funeral, burial and memorial services to their damage in an amount according to proof at the time of trial.

109.   As a further result of the foregoing, Plaintiff is entitled to recover reasonable costs and attorney fees under 42 U.S.C. § 1988.

110.   In committing the acts described above, Plaintiff is informed and believes Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, and VASQUEZ acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages

under 42 U.S.C. § 1983 and California Code of Civil Procedure § 337.34 against Defendants SNIFF, BRACEY, RAHNER, and LYCOPOLUS in an amount according to proof at time of trial.

## SEVENTH CAUSE OF ACTION

### Rights of Familial Association, 42 U.S.C. § 1983, *Monell*
### (Plaintiff v. COUNTY, SNIFF, and DOES 1-25)

111.   Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

112.   Defendants maintained an unconstitutional custom, policy or practice, within the meaning of *Monell*, of detaining and arresting individuals with use of excessive and deadly force and depriving persons of life, liberty and property. Defendants also maintained an unconstitutional force policy regarding the use of alternative force.

113.   Defendants either knew or had constructive knowledge that it should arm and train its law enforcement personnel in assessing the mental and physical condition of any persons their personnel contacted during the course of performing their duties for the COUNTY prior to employing the use of alternative uses of force such as the taser or stun-gun, pepper spray, or pepper ball or bean bag gun, or the use of a baton. Defendants also either knew or had constructive knowledge they could save lives by training its officers in the use of alternative force and changing its policy regarding use of force so that there was a clear alternative to the use of force when a person in obvious mental or physical distress presented to the officers. Despite having this knowledge, Defendants condoned, tolerated and through actions and inactions thereby ratified such policies.

114.   The unconstitutional policy and refusal to train personnel to employ safety practices prior to the use of tasers or stun--guns, pepper sprays, or pepper ball or bean bag guns, or the use of batons, was a direct cause of the death of LAWSON in this case.

115.   By perpetrating, sanctioning, tolerating, and ratifying the conduct and other wrongful acts, Defendants COUNTY and SNIFF acted with an intentional, reckless, and callous disregard for the life of LAWSON and the constitutional and human rights of LAWSON and Plaintiff.

116.   The deprivation of the rights alleged above has destroyed the constitutional rights of LAWSON and Plaintiff to the familial love, society and companionship of the other, which is protected by the substantive due process clause of the Fourteenth Amendment.

117.   Therefore, Defendants have legally and proximately caused Plaintiff to suffer general and special damages according to proof at the time of trial.

118.   Plaintiff is also entitled to recover reasonable costs and attorney fees under 42 U.S.C. § 1988.

119.   In committing the acts described above, Plaintiff is informed and believes Defendant SNIFF acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages against Defendant SNIFF in an amount according to proof at time of trial.

## EIGHTH CAUSE OF ACTION

### Failure to Properly Screen and Hire, 42 U.S.C. § 1983, *Monell*

### (Plaintiff v. COUNTY, SNIFF, and DOES 1-25)

120.   Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

121.   The COUNTY, SNIFF, and DOES 1-25 as a matter of custom, practice and policy, failed to adequately and properly screen and hire the Defendant employees.

122.   The failure of Defendants, their agents, servants, and employees to properly screen and hire the Defendant officers as a matter of policy, custom and practice, in the exercise of their functions, was deliberately indifferent to the Constitutional rights of Plaintiff and done with conscious disregard for the dangers of harm and injury to Plaintiff and others similarly situated.

123.   Due to the acts of the Defendants, the failure to properly screen and hire officers and the continued employment of the Defendant officers, a clear and present danger exists to the residents of the COUNTY of Riverside.

124.   Furthermore, the lack of adequate screening and hiring practices by Defendants evidence a deliberate indifference to the rights of Plaintiff and others in her position.

125.   Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct.

126.   The conduct alleged herein violated LAWSON'S rights alleged above which has legally, proximately, foreseeably and actually caused Plaintiff to suffer general and special damages according to proof at the time of trial.

127.   Plaintiff is also entitled to recover reasonable costs and attorney fees under 42 U.S.C. § 1988.

128.   In committing the acts described above, Plaintiff is informed and believes Defendant SNIFF acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages against Defendant SNIFF in an amount according to proof at time of trial.

/ / /
/ / /

Case 5:13-cv-01954-DDP-DTB Document 10 Filed 12/26/13 Page 25 of 32 Page ID #:107

## NINTH CAUSE OF ACTION

**Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983, *Monell***
**(Plaintiff v. COUNTY, SNIFF, and DOES 1-25)**

129.   Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

130.   The COUNTY, SNIFF and DOES 1-25 as a matter of custom, practice, and policy, failed to maintain adequate and proper training for officers and law enforcement personnel in the COUNTY necessary to educate the officers as to the Constitutional rights of arrestees, to prevent the consistent and systematic use of excessive force by arresting officers, and to prevent the excessive force and extra judicial punishment of potential arrestees by officers.

131.   The COUNTY, SNIFF and DOES 1-25 also failed to provide adequate supervision and discipline to officers and other law enforcement personnel that hold the power, authority, insignia, equipment and arms entrusted to them. Defendants also failed to promulgate and enforce adequate policies and procedures related to alternatives to the use of force, including safety procedures to evaluate when a person needs immediate medical attention.

132.   Said custom, practice, and policy included a failure to adequately investigate, supervise and discipline offending officers that fostered the custom, practice, and policy within the COUNTY which resulted in the death of LAWSON.

133.   Therefore, these Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct.

134.   The failure to promulgate or maintain constitutionally adequate policies regarding training was done with deliberate indifference to the rights of Plaintiff and others in their position.

135.    The constitutionally infirm lack of adequate training, supervision, and discipline as to the officers and law enforcement personnel in this case caused Plaintiff to suffer general and special damages according to proof at the time of trial.

136.    Plaintiff is entitled to recover reasonable costs and attorney fees under 42 U.S.C. § 1988.

137.    In committing the acts described above, Plaintiff is informed and believes Defendant SNIFF acted with oppression, fraud, or malice, entitling Plaintiff to an award of punitive damages against Defendant SNIFF in an amount according to proof at time of trial.

## TENTH CAUSE OF ACTION
### Violation of Bane Act, Cal. Civil Code § 52.1
### (Plaintiff v. All Defendants)

138.    Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

139.    Defendants, while working as officers for the COUNTY, and acting within the course and scope of their official duties, interfered with or attempted to interfere with the rights of LAWSON to be free from unreasonable searches and seizures and unreasonable excessive force by threatening or committing acts involving violence, coercion or intimidation.

140.    On information and belief, LAWSON reasonably believed that if he exercised his constitutional rights to be free from unreasonable searches and seizures and unreasonable excessive force, Defendants would commit acts involving violence, threats, coercion or intimidation against his person.

141.    Defendants injured LAWSON, to prevent LAWSON from exercising his rights or to retaliate against LAWSON for having exercised his rights.

142.   As a direct and proximate result of Defendants' acts, LAWSON sustained or incurred the following loss or damage: LAWSON sustained severe losses to his personal freedom and violations of his constitutional rights; LAWSON sustained severe physical damage and injury to his person; LAWSON sustained a deprivation of the capacity he possessed to live a long, happy, and productive life; LAWSON was deprived of his life.

143.   Defendants' violation of LAWSON'S rights as guaranteed by Cal. Civ. Code § 52.1 entitles Plaintiff to reasonable attorneys' fees and costs of suit pursuant to Cal. Civ. Code §§ 52.1, subd. (h), 52(b)(3).

144.   In committing the acts described above, Plaintiff is informed and believes Defendants acted with a willful and conscious disregard of LAWSON'S rights as secured by Cal. Civ. Code § 52.1, thus entitling Plaintiff to recover punitive damages pursuant to Cal. Civ. Code § 52, subd. (b)(1).

145.   The COUNTY is vicariously liable for the wrongful acts of Defendants SNIFF, BRACEY, RAHNER, VASQUEZ, KEHRIER, and LYCOPOLUS pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

## ELEVENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Plaintiff v. All Defendants)

146.   Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

147.   On information and belief, the above-described acts of Defendants, and each of them, were outrageous, intentional, unlawful, malicious, and committed for the express purpose of causing PLAINTIFF to suffer increased humiliation, mental

anguish, emotional and physical distress.  The conduct of each of these Defendants in confirming and ratifying this conduct was done with the knowledge that PLAINTIFF would suffer great physical and emotional distress, and was committed with a wanton and reckless disregard for the consequences to PLAINTIFF.  There is no statutory or judicially created privilege attaching to any of these Defendants which would exempt them from tortuous liability for the above-described actions.

148.   Moreover, due to the wrongful, intentional, and malicious acts of each of these Defendants, PLAINTIFF has suffered, and continues to suffer, extreme pain and severe mental anguish, as well as mental and physical damage and injury to her mind and body.

149.   As a proximate result of the above-mentioned Defendants' conduct, and each of them, PLAINTIFF has been required to employ and did employ physicians to examine, treat, and care for her, and have incurred additional medical expenses for hospital bills and other incidental medical expenses in an amount according to proof at trial.

150.   The acts and omissions alleged herein were intended by each Defendant to cause injury to PLAINTIFF, and were done with a conscious disregard for the rights and safety of PLAINTIFF, thereby justifying the awarding of exemplary and punitive damages against each of the individual Defendants in an amount to be determined according to proof at trial.

## TWELFTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress
### (Plaintiff v. All Defendants)

151.   Plaintiff repeats and re-alleges all prior paragraphs of this Complaint and incorporates the same herein by this reference as if those paragraphs were set forth in full herein.

152. Defendants BRACEY and RAHNER attempted to hold LAWSON to the ground, despite his obvious, outward physical symptoms that indicated he was in some sort of mental or physical distress.

153. Defendant LYCOPOLUS discharged two full taser cartridges, discharging the X26 taser a total of nine times in less than three minutes on LAWSON in an attempt to subdue him.

154. Defendant LYCOPOLUS swung his baton multiple times at LAWSON'S person, repeatedly striking LAWSON.

155. Defendants KEHRIER and VASQUEZ continued to hold LAWSON to the ground following the unreasonable and excessive use of force and placed handcuffs and a hobble on LAWSON.

156. LAWSON was crying out in fear and pain during this entire encounter with Defendants.

157. LAWSON was pronounced dead approximately an hour later at Kaiser Foundation Hospital in Ontario.

158. On information and belief, a reasonable law enforcement officer would not have struck a person repeatedly with a baton and mortally wounded LAWSON following the deployment of two taser cartridges, discharging the X26 taser a total of nine times in less than three minutes on LAWSON under the same circumstances because: (a) LAWSON posed no real, immediate or significant threat of death or serious bodily injury to the Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, VASQUEZ, or the public; (b) it is inconclusive simply from LAWSON'S race and dress that LAWSON was in fact the same person identified as a suspect in the burglary call to which Defendant BRACEY originally responded, and (c) there were several alternative means of responding to the situation without excessively using multiple forms of force.

159. Plaintiff was present at the scene at the time LAWSON was struck in the back of the head and was aware that LAWSON was being injured.

160.   As a result of seeing her son brutally beaten and killed, Plaintiff has suffered serious emotional distress, including but not limited to, suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, depression, and shock.

161.   Defendants' conduct of brutally beating LAWSON in the head as he cried out in pain was a substantial factor in causing Plaintiff's serious emotional distress.

162.   The COUNTY is vicariously liable for the wrongful acts of Defendants BRACEY, RAHNER, LYCOPOLUS, VASQUEZ, and KEHRIER pursuant to section 815.2 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

/ / /

/ / /

## PRAYER FOR RELIEF

Plaintiff requests a trial by *jury* of all issues triable as a matter of right by a jury. WHEREFORE, Plaintiff prays for judgment as follows:

i.   For general damages in the sum according to proof at the time of trial;

ii.  For special damages in a sum according to proof at the time of trial;

iii. For an award of interest, including prejudgment interest, at the legal rate;

iv.  For costs of suit and reasonable attorneys' fees as provided by law, including, but not limited to 42 U.S.C. § 1988 and Cal. Civ. Code §§ 52.1 subd. (h), 52, subd. (b)(3).

v.   For punitive damages as provided by law, including, but not limited to 42 U.S.C. § 1983, California Code of Civil Procedure § 337.34, and Cal. Civ. Code § 52, subd. (b)(1) against individual Defendants BRACEY, RAHNER, LYCOPOLUS, KEHRIER, VASQUEZ, and SNIFF in an amount according to proof at the time trial;

vi.  Any other and further relief that the court deems just, proper and appropriate.

Dated: December 9, 2013                    **McMURRAY HENRIKS, LLP**

By: _____
RANDY H. MCMURRAY, Esq.
Attorney for Plaintiff

31

Case 5:13-cv-01954-DDP-DTB   Document 9   Filed 12/09/13   Page 32 of 32   Page ID #:112

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: December 9, 2013

**McMURRAY HENRIKS, LLP**

By: _____
RANDY H. MCMURRAY, Esq.
Attorney for Plaintiff